UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 1:07-cr-0109 LJO |
| Plaintiff, | ) ) | ORDER AND MEMORANDUM DECISION RE: ORDER TO SHOW CAUSE |
| v. | ) ) | |
| MICHAEL DAVID RAMIREZ, | ) ) | |
| Defendant. | ) ) ) | |

The Order to Show Cause issued by the Honorable Lawrence J. O'Neill, United States District Judge, Eastern District of California, to attorney Eric Chase regularly came on for hearing January 14, 2008, at the hour of 8:30 a.m. in Courtroom 3 before the Honorable Oliver W. Wanger, in the above-captioned court.

At the request of the Defendant, the proceeding was conducted *in camera* in a closed courtroom, outside the presence of the public.

It was necessary to conduct the proceedings *in camera*, by reason of the need to disclose privileged and confidential information concerning the rights of Michael David Ramirez, Defendant and the work product and legal strategy of counsel.

1

**PROCEDURAL HISTORY**

The Order to Show Cause arises from the prior scheduled jury trial in this case, which was set to commence December 3, 2007. A prior defense motion for continuance was denied November 21, 2007.  On December 3, 2007, when the trial was scheduled to commence, defense counsel advised the government of new evidence and a new expert opinion.  As a result, the government requested, and was granted, a continuance of the trial to January 14, 2008. This OSC was issued to decide whether the cost of summoning the jury panel should be charged to defense counsel as a sanction.

**FACTS**

At a prior trial confirmation hearing held November 21, 2007, Eric Chase, attorney for Michael David Ramirez, moved for a continuance of the trial.  Mr. Chase represented to Judge O'Neill that he had a murder case in Sacramento, California, set for the same time in December, 2007 as this case was set.  Judge O'Neill denied Defendant's motion for continuance.

Mr. Chase then obtained a continuance of the trial date in his Sacramento murder case to February, 2008.  Mr. Chase, as an officer of the court, stated that he began preparation for the trial in this case to commence December 3, 2007, and was prepared to go to trial on that date.

The Thursday prior to trial, November 29, 2007, Mr. Chase was informed by his associate attorney, Nancy Yamini, Esq., that she had received information from Defendant pertinent to the defense case about access to the computer from which child pornography was downloaded.

2

1    Prior to Thursday, November 29, 2007, the defense to be
2 presented at trial was based on a theory of accidental
3 downloading by Defendant through a file sharing network, which
4 the Defendant had been searching to obtain legally authorized
5 material.
6    Defense counsel evaluated this defense and communicated his
7 opinion of the likelihood of success of that defense to the
8 Defendant.  Counsel's analysis and case evaluation were disclosed
9 to the Court in the OSC hearing, however, to maintain privilege
10 and to avoid potential future prejudice to Defendant, the
11 substance of counsel's opinion is not here repeated.
12    Defendant and his family had been continuously unwilling to
13 assert any other line of defense through and including November
14 29, 2007.
15    At around 7:00 p.m., November 29, 2007, Mr. Chase had a
16 conversation with his associate attorney about the case.  During
17 that conversation new facts were revealed to Mr. Chase that
18 concerned the defense.  Mr. Chase had been working with his
19 expert on the primary theory of defense, accidental downloading,
20 and the expert's analysis pursuant to that defense had been
21 completed.  Following 7:30 p.m., when Mr. Chase learned from his
22 associate attorney, Nancy Yamini, about additional evidence, Mr.
23 Chase began meetings with the Defendant and his family which
24 continued into the weekend.  Mr. Chase was not authorized by
25 Defendant and his family, and was specifically instructed by them
26 that no other line of defense could be advanced in the case
27 except accidental downloading.
28    Mr. Chase stated at the hearing that he had cleared his

3

1  calendar for trial and was fully prepared to try the case
2  commencing Monday, December 3, 2007.  Mr. Chase commenced the
3  drive from Los Angeles to Fresno on Monday morning, December 3,
4  2007.  He had all of his files and four suits with him and was
5  prepared to stay in Fresno to complete the jury trial the week of
6  December 3, 2007.
7       Around 7:00 a.m., Mr. Chase called his expert, who had
8  arrived at the ICE Fresno Office at approximately 6:00 a.m. to
9  review the hard drive from the Defendant's computer.  The expert
10 had been engaged in other matters the prior week and traveled
11 from Sacramento to Fresno Monday morning.  Mr. Chase instructed
12 the expert to look for additional evidence on the computer hard
13 drive.
14      Around 9:30 a.m., when Mr. Chase arrived in Fresno and
15 traveled to the ICE Office and met with his expert, the expert
16 informed Mr. Chase that there was additional evidence on the
17 computer including, but not limited to, another person's "user
18 account" and that another external hard drive had been attached
19 to the computer in addition to Defendant's.
20      Mr. Chase then traveled to the Courthouse and sometime
21 before 11:30 a.m., met with the Defendant, explained the expert's
22 findings to the Defendant, and again asked for permission to
23 present other material in defense of the Defendant.  Shortly
24 before 11:30, Defendant gave Mr. Chase permission to present
25 additional defense material.  This was the first time that Mr.
26 Chase was authorized to use the newly discovered material that
27 had first been identified between the hours of 6:30 a.m. and 9:30
28 a.m. the morning of December 3, 2007.

1   The Court finds that there was no lack of diligence by
2   counsel in directing his expert to conduct the investigation to
3   locate other user evidence, because the client and his family had
4   prohibited the line of inquiry and investigation by defense
5   counsel and had specifically objected to presenting any defense
6   which would shift responsibility for downloading to any other
7   person.
8   Mr. Chase then advised the government attorney in open court
9   shortly before the 11:30 hearing about his expert's additional
10  opinions and further evidence.  Mr. Chase understood he was going
11  to trial on December 3.  He was fully prepared to go to trial,
12  and did not act to impede or interfere with that process.  He was
13  prepared to use his forensic computer expert and the newly
14  discovered evidence commencing December 3, 2007.
15  When Mr. Chase advised the government's attorney, Ms.
16  Oberto, about the newly discovered evidence and the additional
17  theory of his defense, the government requested additional time
18  and a continuance to meet this new evidence.
19  The Court finds that Mr. Chase has been truthful in his
20  statements to the Court about trial readiness, and that he did
21  not purposefully take any action to delay, impede, or otherwise
22  prevent the trial from commencing on December 3, 2007.  Due to
23  unusual circumstances not of Mr. Chase's making, late-discovered
24  evidence, and new authority from the client caused a change of
25  defense strategy.
26  Under these unique circumstances, through no one's fault,
27  the position taken by the client and his family affected the
28  expert's scope of work and caused additional evidence not to be

discovered or available until December 3, 2007.  Mr. Chase was not reckless or negligent, as his investigation and formulation of a defense was limited by circumstances not within his control.

Mr. Chase did not engage in a ploy nor a stratagem to avoid trial.  Rather, the fortuity that confronted him was occasioned by the dynamics of the case and the decision of others he was bound to respect.  Mr. Chase had continued the Sacramento murder case and was fully prepared to proceed to trial on December 3, 2007, in Judge O'Neill's court.

## THE LAW

In *United States v. Austin*, 749 F.2d 1407, 1409, (9th Cir. 1984) a District Judge sanctioned an attorney in an amount approximating the cost of summoning a jury panel for the alleged failure of the attorney to exert "more diligence" to stay in touch with the defendant client and make sure the client stayed in touch with the attorney to be present for trial.  A continuance of the trial was required when the client, who was a long haul trucker, failed to appear on the trial date.  The attorney had attempted to contact the client but was unable to do so.

The Court of Appeal held that the facts did not demonstrate that the attorney's failure to contact his client to advise the client of a new trial date was willful, intentional, reckless, or in bad faith.  The Court reversed the sanction award, which was made under 28 U.S.C. § 1927, based on the following finding: "The Court's finding of a lack of diligence does not conform to the requirements of § 1927.  *See United States v. Ross*, 535 F.2d

346, 349 (6th Cir. 1976) (it is inappropriate to impose a sanction for an unintended inconvenience to the Court).  In *Austin*, the Ninth Circuit found the evidence insufficient to support the sanction imposed on the attorney.  The Court went on to find that imposing a sanction to cover the approximate cost of summoning jurors was not within the statutory authority of the court, because under 28 U.S.C. § 1927 only those taxable costs enumerated in 28 U.S.C. § 1920 (costs taxable to a losing party) may be recovered and the cost of summoning a jury is not expressly set forth in § 1920 as a recoverable cost.  *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 757-60, 100 S.Ct. 2455 (1980).

Here, an alternative basis for an award of sanctions is found under the court's "inherent powers."  "It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a court, because they are necessary to the exercise of all others.'"  *Chambers v. Nasco, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 2132 (1991).  The Supreme Court in  *Chambers* expressly recognized a court has inherent power to assess attorney's fees exists "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Id.* 111 S.Ct. at 2133.  In *United States v. Wallace*, 964 F.2d 1214, 1220 (D.C. Cir. 1992) the D.C. Circuit found conduct was inadvertent, not reckless or in bad faith where an attorney failed to timely subpoena defense witnesses and caused the judge to declare a mistrial and excuse the jury.  The D.C. Circuit specifically held:

> [I]t seems appropriate not to impose the sanction for an unintended inconvenience to the court no matter how annoying it might be. Personal responsibility should, in this instance, flow only from an intentional departure from proper conduct, or, at a minimum, from a reckless disregard of the duty owed by counsel to the court.

*United States v. Ross*, 535 F.2d 346, 349 (6th Cir. 1976).

In this case, Chase, after having been denied a continuance "cleared the decks" for trial and was in Fresno ready to try the case on December 3, 2007. It was then that he discovered from his expert that additional evidence existed. This late surfacing evidence was not Chase's fault. Although it could be argued that he should have been more diligent in directing his expert to look for more evidence; his client and the client's family expressly limited the scope of defenses Chase was authorized to present. It was not until shortly before 11:30 a.m. on the day of trial that the client, for the first time, authorized a broader theory of defense which made the newly discovered evidence potentially applicable.

As in *Wallace*, even if there were negligent oversight, it is not an appropriate basis for the imposition of sanctions. 964 F.2d at 1221.

## CONCLUSION

A convergence of unforeseen circumstances caused attorney Chase to advance a last minute defense. In a case where the requirements of Fed. R. Crim. Proc. Rule 16 require a report and disclosure of all defense expert opinions, although unavoidable, the delay here was occasioned only by the client and the client's family's conduct, which limited counsel's scope of inquiry for

available defenses.  While the conduct could be analyzed in terms of lax client control, this is a criminal case and the potential loss of liberty faced by the Defendant made inevitable the actions that were taken by attorney Chase to comply with his ethical duties to his client.

There is no intentional or reckless, vexatious or bad faith conduct, nor a violation of an express court order, nor a knowing and intentional violation of any rule of court.  Based on all the facts and law, good cause exists for the actions of attorney Chase.  The Order to Show Cause is discharged.

IT IS SO ORDERED.

Dated:   **January 15, 2008**            /s/ Oliver W. Wanger
                                        UNITED STATES DISTRICT JUDGE